UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CATHERINE J. SCILLIA,<br>　　*Plaintiff*,<br><br>　　　　v.<br><br>AMERICAN EDUCATION SERVICES *et al.*,<br>　　*Defendants*. | No. 3:22-cv-1257 (JAM) |

### RULING ON MOTIONS TO DISMISS AND FAILURE TO SERVE

In this lawsuit, *pro se* plaintiff Catherine Scillia sues the U.S. Department of Education ("DOE") and three student loan providers: the Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("AES"), Navient Solutions, LLC ("NSL"), and Granite State Management & Resources ("GSMR").

Scillia attended the University of New Haven and, like many college students, she used loans to cover her education expenses. After graduating, she began paying back the loans and, at some point, she believed that she was enrolled in the Public Service Loan Forgiveness ("PSLF") program—a federal debt relief program for graduates who choose to work in the public sector following graduation. Years later, however, she discovered that she was never enrolled in that program.

Scillia complains that the defendants prevented her from enrolling in the PSLF program by failing to provide her with a reasonable accommodation for her learning disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794. She also claims that they employed deceptive and unfair consumer practices in violation of the so-called "Consumer Protection Act." She seeks money damages.

1

Two of the defendants, AES and NSL, have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In the meantime, Scillia has not properly served her complaint on the other two defendants, DOE and GSMR, in accordance with the Federal Rules of Civil Procedure, despite my granting her an extension to do so. For the reasons set forth below, I will grant AES's and NSL's motions to dismiss for failure to state a claim upon which relief can be granted, and I will dismiss defendants DOE and GSMR from this action because Scillia has not served them.

## BACKGROUND

I derive the following facts from Scillia's discursive *pro se* complaint.[1] Scillia attended the University of New Haven from 2001 to 2004.[2] In order to cover her college expenses, she received nearly $50,000 in student loans through the Federal Family Education Loan ("FFEL") Program.[3] Under that now-defunct scheme, the U.S. Government subsidized and guaranteed private student loans.[4] NSL (which was then known as "Sallie Mae") initially managed Scillia's FFEL loan.[5]

Around July 2005, Scillia consolidated her FFEL loan into what is termed a "Direct Loan."[6] In contrast to an FFEL loan, the federal government issues and funds Direct Loans.[7] In

---

[1] Doc. #1-1 at 5. Most of the citations in this part of the ruling are to Scillia's *pro se* complaint, which I construe in the light most favorable to her. I also rely on documents that Scillia has attached to her opposition papers as well as documents submitted by the defendants that are referenced by or otherwise integral to the complaint. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).
[2] Doc. #1-1 at 5.
[3] Docs. #1-1 at 5, #20-5 at 16–23 (Scillia's FFEL application, dated August 20, 2001).
[4] "Under [the FFEL] program, the federal government guarantees student loans that are funded by private lenders." *Hyland v. Navient Corp.*, 2019 WL 2918238, at *1 (S.D.N.Y. 2019) (citing 20 U.S.C. § 1071 *et seq.*); *Gill v. Paige*, 226 F. Supp. 2d 366, 369 (E.D.N.Y. 2002) (same); *see also New York by James v. Pa. Higher Educ. Assistance Agency*, 2020 WL 2097640, at *1 (S.D.N.Y. 2020) (noting that the FFEL Program is now discontinued).
[5] Doc. #1-1 at 5; *see also* Doc. #20-5 at 14–15 (NSL's letter describing Scillia's loan history, dated December 15, 2021).
[6] Doc. #1-1 at 5; *see also* Doc. #20-5 at 14 ("In August 2005 these loans were paid in full though consolidation.").
[7] *Hyland*, 2019 WL 2918238, at *1 (explaining that the federal government issues Direct Loans, which are then serviced by third parties through servicing contracts with the DOE).

2

October 2005, only three months later, Scillia consolidated her Direct Loan back to an FFEL loan.[8] At this point, AES rather than NSL began servicing her FFEL loan.[9]

A few years later, in 2007, Congress created the PSLF program.[10] It was meant to provide debt relief to public sector employees who used their higher education to serve their communities for a minimum of ten years.[11] The program imposed several requirements that graduates had to satisfy in order to secure debt relief.[12] Critically relevant here, the PSLF program is only available for Direct Loan borrowers and for those who make ten years of payments.[13] As noted above, Scillia was no longer a Direct Loan borrower as of October 2005.

In February 2008, Scillia began full-time employment with the Connecticut Department of Social Services as a field investigator—a quintessential public service job.[14] Three years later, Scillia learned from AES in 2011 that her FFEL loan was changed to a "Rate Reduction Program as an incentive for making on-time payments."[15] She alleges that AES's description of this change made it sound "similar" to the PSLF program.[16] Around this same time, Scillia called AES and a company representative assured her several times that she was enrolled in the PSLF program and even faxed a verification form to her employer.[17]

---

[8] Doc. #1-1 at 5; *see also* Doc. #20-5 at 14 (explaining that "Scillia consolidated a second time in 2005 from the [Direct Loan] program back to the FFEL[] program").

[9] Doc. #1-1 at 5, 7–8. At this stage of the proceedings, I must accept Scillia's plausible, non-conclusory allegations in her *pro se* complaint as true. I note only that NSL denies servicing Scillia's student loans in 2019 and explains that it did not service them after 2005. *See* Doc. #20-5 at 15 ("[NSL] has not truly been her servicer since 2005").

[10] Doc. #1-1 at 4; *see also Hyland v. Navient Corp.*, 48 F.4th 110, 114–15 (2d Cir. 2022) (citing the College Cost Reduction and Access Act, Pub. L. No. 110-84, § 401 (2007)) (describing the PSLF program).

[11] *See Hyland*, 48 F.4th at 114–15.

[12] *Hyland*, 2019 WL 2918238, at *1–2 (explaining the requirements for PSLF and noting that "[o]nly Direct Loans qualify for PSLF").

[13] *Ibid.*; *see* 34 C.F.R. § 685.219(c)(1)(iii) ("Makes 120 separate monthly payments after October 1, 2007, on *eligible Direct loans* for which forgiveness is sought." (emphasis added)).

[14] Doc. #1-1 at 4.

[15] *Id.* at 5.

[16] *Ibid.*

[17] *Id.* at 5–6.

Scillia alleges that she requested "ADA reasonable accommodations" for her learning disability numerous times from AES representatives, but she was told that none were available.[18] Scillia claims that during this general time period she was under the impression that she was enrolled in the PSLF program.[19]

In January 2017, Scillia learned that she needed to regularly submit employer certification letters to the DOE in order to comply with the requirements of the PSLF program.[20] After submitting such verification, she received an email from FedLoan Servicing—a student loan servicer for the DOE that collects and tracks monthly payments—that rejected her PSLF employment certification form and informed her that she did not have any eligible loans for this program.[21] She was upset and felt that the government agencies and financial institutions responsible for managing her student loans had failed her.[22]

Several years later in September 2019 Scillia alleges that NSL, along with GSMR, assisted her in consolidating her FFEL loan back to a Direct Loan.[23] She alleges that she asked NSL about her "right to [an] ADA reasonable accommodation," but the representative denied her request.[24] She claims that both NSL and GSMR violated the ADA because neither loan servicer provided her with a reasonable accommodation and then both failed to provide her with an opportunity to reverse the September 2019 consolidation—something she only had 10 days to

---

[18] *Id.* at 7, 9–10.
[19] *See id.* at 5–7.
[20] Doc. #32-1 at 3 (¶ 2).
[21] Doc. #1-1 at 7.
[22] *See ibid.* ("I was misguided, treated unfairly, suffered from major emotional abuse and distress, and still do.").
[23] *Ibid.* Scillia has submitted a FedLoan servicing document that lists a "DLUCNS" or "Direct Unsubsidized Consolidation Loan" executed on September 11, 2019. *See* Doc. #30-9 at 1.
[24] Doc. #1-1 at 7.

do.[25] She accuses GSMR of trying to "cover up" what happened with the consolidation the following year.[26]

Fed up, Scillia submitted several complaints to the DOE Ombudsman Group—a section of that federal agency dedicated to helping borrowers resolve issues with their student loans.[27] A representative told Scillia that "AES informed them that they had no record of [her] inquiring about the PSLF until June 22, 2020."[28] She advised Scillia to request her communication transcripts via the Freedom of Information Act.[29] Scillia submitted such a request in June 2021, but the request was closed at some point later without explanation.[30]

In May 2021, Scillia filed a discrimination complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO").[31] The CHRO dismissed her complaint and released jurisdiction over a year later in July 2022.[32] Two months later, she filed this lawsuit against AES, NSL, the DOE, and GSMR in the Connecticut Superior Court.[33] The case was later removed to this Court.[34]

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[25] *Id.* at 7–8.
[26] *Id.* at 8.
[27] *Ibid.*
[28] *Ibid.*; *see* Doc. #32-9 at 1–2 (response from the Dispute Specialist at the Federal Student Aid Ombudsman Group).
[29] Doc. #1-1 at 8.
[30] *Ibid.*
[31] *Ibid.*; *see also* Doc. #32-1 at 1–15 (Scillia's CHRO complaint).
[32] Doc. #1-1 at 8–9; *see also* Doc. #32-5 at 1–3 (CHRO's Case Assessment Review and Release of Jurisdiction, dated July 19, 2022).
[33] Doc. #1 at 1 (¶ 1); *see also* Compl., *Scillia v. Am. Educ. Servs. et al.*, No. AAN-CV22-5022366-S (Conn. Super. Ct. Sept. 15, 2022), Doc. #100.31, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=AANCV225022366S [https://perma.cc/B69D-KKXB] (last accessed July 24, 2023).
[34] Doc. #1 at 1–3.

5

678 (2009).[35] As the Supreme Court has explained, this "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

The Court liberally construes the pleadings of a *pro se* party in a non-technical manner to raise the strongest arguments that they suggest. *See, e.g.*, *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (*per curiam*). Still, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). A complaint that makes a threadbare recital of the elements of a cause of action without including supporting factual allegations does not establish plausible grounds for relief. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

### *Disability discrimination*

Although Scillia's complaint alleges a violation of the ADA only, I liberally construe it to raise claims under both the ADA and Rehabilitation Act—two federal statutes that provide essentially equivalent protections against disability discrimination. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). "[T]he ADA's first three titles proscribe

---

[35] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

discrimination against individuals with disabilities in employment and hiring (Title I), access to public services (Title II), and public accommodations (Title III). Title II is, in turn, divided into Parts A and B: Part A governs public services generally, and Part B governs the provision of public transportation services." *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). "The Rehabilitation Act provides that no individual shall be subject to discrimination in any program or activity receiving federal financial assistance '*solely by reason* of her or his disability.'" *Natofsky v. City of New York*, 921 F.3d 337, 344–45 (2d Cir. 2019) (emphasis in original) (quoting 29 U.S.C. § 794(a)).

Title I of the ADA does not apply to Scillia's claims because she does not allege a claim for discrimination in employment or hiring. Nor does Title II (Part A) of the ADA apply to NSL because it is not a public entity.[36] In addition, Title II (Part B) of the ADA does not apply to either AES or NSL because she does not allege discrimination in public transportation. Therefore, I construe Scillia's complaint as raising claims under Title II (Part A) as to AES and under Title III as well as the Rehabilitation Act as to both AES and NSL.

As an initial matter, both AES and NSL argue for different reasons that Scillia's disability discrimination claims are time-barred.[37] AES relies on the three-year statute of limitations that governs claims under the ADA and the Rehabilitation Act. *See Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 63 (2d Cir. 2021) (*per curiam*); *Purcell v. New York Inst. Of Tech. – Coll. Of Osteopathic Med.*, 931 F.3d 59, 63 (2d Cir. 2019).

---

[36] *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186 (2d Cir. 2015) (explaining that "[a] public entity" as used in 42 U.S.C. § 12132 "includes a state or local government body or any instrumentality thereof"); State of Delaware, Department of State: Division of Corporations, Navient Solutions, LLC, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx [https://perma.cc/5BCP-LC6W] (last accessed July 24, 2023) (a Delaware-based limited liability corporation).
[37] *See* Docs. #18-1 at 7–8, #20-1 at 17–18.

Scillia's allegations against AES arise from communications she had with the company in 2011.[38] The deadline for filing a disability discrimination claim from any interaction she had with AES in 2011 has long passed, and Scillia offers no reason for her delay in bringing forth those claims.[39] Scillia mentions in her opposition to AES's motion to dismiss that she called AES in August 2020 to request a reasonable accommodation and AES denied it.[40] But that is nowhere in her complaint, and a party may not "amend [a] complaint in a memorandum in opposition to a motion to dismiss." *Tyus v. Newton*, 2015 WL 1471643, at *5 (D. Conn. 2015) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Accordingly, the statute of limitations bars Scillia's disability discrimination claims against AES for the conduct she alleges in the complaint that occurred in 2011.

NSL's allegedly discriminatory conduct occurred "sometime in 2019."[41] Because Scillia filed her complaint in September 2022, it is not clear that the three-year statute of limitations would bar her claims. But NSL relies instead on a Connecticut law that requires that allegations of discrimination before the CHRO be brought within 180 days of the alleged discriminatory action, *see* Conn. Gen. Stat. § 46a-82(f)(1), and it points out that Scillia waited more than six months when she filed her CHRO complaint in October 2021.[42]

But the problem for NSL's argument is that claims under Title III of the ADA and under the Rehabilitation Act are not subject in the first instance to any requirement that they be administratively exhausted before the CHRO. *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138–39 (2d Cir. 2007) (*per curiam*) (Title III of the ADA); *Costabile v. New York*

---

[38] Doc. #1-1 at 5–7.
[39] Nor could Scillia argue that the statute of limitations should run from the date when she discovered she was not enrolled in the PSLF program because her disability discrimination claims are based on AES denying her requests for a reasonable accommodation over the phone in 2011.
[40] *See* Doc. #30 at 9.
[41] Doc. #1-1 at 7.
[42] Docs. #1-1 at 8, #20-1 at 17.

*City Health and Hosps. Corp.*, 951 F.3d 77, 81–82 (2d Cir. 2020) (*per curiam*) (Rehabilitation Act). So I decline to dismiss Scillia's claims against NSL on grounds of either the statute of limitations or the failure to timely file a complaint with the CHRO.

Turning now to the merits of Scillia's disability discrimination claims, Scillia alleges that each defendant discriminated against her by denying her repeated requests for a reasonable accommodation for her learning disability.[43] In that context, the ADA and Rehabilitation Act "prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004).

"A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta D.*, 331 F.3d at 282. "In examining [a reasonable accommodation] claim, we ask whether a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

This is where Scillia's complaint falls short. She does not plausibly allege that either AES or NSL denied her the opportunity to meaningfully participate in the PSLF program. It is important to emphasize the disconnect here. Neither AES nor NSL offer PSLF—the federal government does.[44] AES and NSL offer general loan services to student borrowers. Scillia does

---

[43] Doc. #1-1 at 7–10.
[44] *Id.* at 4 ("Congress created PSLF").

9

not allege that she was denied the opportunity to participate in those services, such as loan consolidation. In fact, the complaint makes clear that she used those services quite frequently.[45]

Scillia complains that each defendant failed to "guide and direct" her to the type of loan that was eligible for PSLF.[46] At oral argument, Scillia stated that she wanted someone to explain to her "one on one" that she was "positioned in the correct type of loan" that "would best fit her predicament." In the same vein, Scillia argues that the AES owed her a duty of care as a customer that it breached through poor customer service.[47]

But the purpose of a reasonable accommodation is to provide meaningful access to the defendant entity's program or service. According to Scillia's complaint, she had just that with both AES and NSL.[48] The ADA and Rehabilitation Act do not make defendants liable for their failure to provide meaningful access to *another* entity's program or service.

And even if they did, Scillia alleges in only the most conclusory terms that both AES and NSL denied her requests to accommodate her learning disability. She states that both defendants denied her repeated requests without any additional facts or explanation.[49] She never alleges what type of accommodation she requested from either defendant. Nor does she allege how each defendant's failure to accommodate her then denied her access to the specific program or service she sought—whether it was the PSLF program or the 10-day window to reverse the consolidation of her loan.[50] Nor does she allege what accommodation either defendant could

---

[45] *Id.* at 5, 7–8.
[46] *Id.* at 5.
[47] Doc. #30 at 13 ("AES owed a *duty of care* to the Plaintiff but instead breached this duty of care when AES failed to provide the Plaintiff with their advertised 'quality customer service.'" (emphasis in original)).
[48] Doc. #1-1 at 5, 7–8.
[49] *Id.* at 7–8 ("I talked numerous times to AES via phone and requested ADA reasonable accommodations.") ("[NSL] denied my request for ADA via phone again.") ("[NSL] violated [the] ADA by failing to provide me with a reasonable accommodation when asked and failed to provide me with my opportunity time to stop the consolidation within the 10-day window period I had to reverse the consolidation.").
[50] *See id.* at 7 ("I have been denied my right for a reasonable accommodation to better understand the process of the loan terms as a student loan borrower[.]"), 9 ("AES and the loan servicers mentioned failed to provide a directive for

have provided to assist her. Scillia's complaint is devoid of any non-conclusory facts to show that AES or NSL denied her meaningful access to their programs or services.[51] The fact that Scillia is unhappy with the customer service she received does not mean that the defendants have unlawfully discriminated against her on the basis of her disability.

Additionally, Scillia seeks only money damages from the defendants.[52] But that remedy would only be available for intentional violations here. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) ("[M]onetary damages are recoverable [under the Rehabilitation Act] only upon a showing of an *intentional* violation." (emphasis in original)); *Powell*, 364 F.3d at 86 (no money damages under ADA Title III); *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186–87 (E.D.N.Y. 2015) ("[I]t is well settled that monetary damages are only available under Title II of the ADA where the [p]laintiff is able to demonstrate intentional discrimination."). To show an intentional violation, Scillia must plead facts that demonstrate "deliberate indifference to the strong likelihood [of] a violation." *Loeffler*, 582 F.3d at 275. Scillia's complaint contains no facts that suggest deliberate indifference on the part of the defendants.

In short, I conclude that Scillia's disability discrimination claims against AES are barred by the three-year statute of limitations. I further conclude that on the merits Scillia has failed to

---

my protected class (Learning Disability) under ADA guidelines when I inquired via phone.").

[51] NSL argues that Scillia's claims fail because she was ultimately able "to *obtain* the 2019 Consolidation Loan that she requested (and indeed, obtained)." Doc. #20-1 at 19 (emphasis in original). NSL explains that the ADA does not protect qualified individuals who do not understand the "content" of the entity's services or programs. *See ibid.* ("If Plaintiff means to allege that she did not understand the *content* or terms of the 2019 Consolidation Loan, then that is simply not covered by the ADA." (emphasis in original)). I need not address this argument because Scillia's claims fail for the reasons explained above. And because the complaint is subject to dismissal on other grounds, I also need not address NSL's other argument that the loan documents Scillia signed disclosed the risk that she may lose PSLF eligibility. *Ibid.*

[52] Doc. #1-1 at 11.

allege a plausible claim for disability discrimination against either AES or NSL. Accordingly, I will grant the defendants' motions to dismiss the disability discrimination claims.

### *Consumer Protection Act*

Scillia alleges that the defendants violated the "Consumer Protection Act" by engaging in deceptive and unfair consumer practices.[53] There is no federal or state statute with this name. If Scillia meant to refer to the federal Consumer Financial Protection Act, which prohibits "unfair, deceptive, or abusive acts and practices," then her claims fail because only the Consumer Financial Protection Bureau can enforce that statute. *See* 12 U.S.C. § 5531(a); *Oparaji v. Mun. Credit Union*, 2021 WL 2414859, at *3 (S.D.N.Y. 2021), *aff'd*, 2022 WL 1122681 (2d Cir. 2022).

Her claim also fails under the Connecticut Unfair Trade Practices Act ("CUTPA"), which prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). A CUTPA claim is subject to a three-year statute of limitations. *See* Conn. Gen. Stat. § 42-110g(f). Therefore, any CUTPA claim against AES is time-barred for the same reasons I have explained above with respect to the disability discrimination claims.

Nor has Scillia alleged a plausible claim for relief under CUTPA against NSL. "[T]o prevail in a private cause of action under CUTPA, a plaintiff must establish that the defendant has (1) engaged in unfair methods of competition or unfair or deceptive acts or practices (2) in the conduct of any trade or commerce, (3) resulting in (4) an ascertainable loss of money or property, real or personal, by the plaintiff." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 212 (2021). To decide if a practice is unfair or deceptive, a

---

[53] *Id.* at 6–7, 11.

court must consider "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some [common-law], statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers [competitors or other businesspersons]." *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 790 (2019).

Scillia does not allege any non-conclusory facts to show that NSL engaged in an unfair or deceptive business practice. She claims that NSL "cheated [her] out of [her] qualification and right to PSLF through [its] deceptive consumer practices [it] played against [her] via phone."[54] These conclusory facts, without more, do not suggest "intentional, reckless, unethical or unscrupulous conduct." *Cenatiempo*, 333 Conn. at 791; *see Michel v. Yale Univ.*, 547 F. Supp. 3d 179, 193–94 (D. Conn. 2021) (dismissing the plaintiff's CUTPA claims that contained no factual allegations to support his conclusory assertions that Yale University falsely represented its virtual education).

In short, Scillia has failed to allege plausible grounds for relief with respect to her claim under the so-called "Consumer Protection Act." To the extent this claim suggests a violation of the federal Consumer Financial Protection Act, there is no private right of action. To the extent this claim suggests a violation of CUTPA, any such claim is time-barred against AES, and Scillia has otherwise failed to allege facts—as distinct from conclusory statements—to show that NSL engaged in an unfair or deceptive business practice in violation of CUTPA. Accordingly, I will dismiss Scillia's claim for violation of the "Consumer Protection Act."

---

[54] *Id.* at 7.

### *Failure to serve DOE and GSMR*

Scillia has also named the DOE and GSMR as defendants in this lawsuit.[55] In January 2023, I ordered her to provide proof that she had served both defendants in accordance with the Federal Rules of Civil Procedure.[56] I required her to provide such proof of service by February 3, 2023.[57] With respect to the DOE, I directed Scillia to Rule 4(i) and noted that her "proof of service must make clear that [Rule 4(i)'s] requirements have been satisfied including service on the U.S. Attorney and Attorney General."[58]

In response to both orders, Scillia filed the same proofs of service that she had previously filed on the docket.[59] According to her, she served the DOE by sending the summons and complaint to the Secretary of Education in Washington, D.C., by certified mail.[60] And she served GSMR by sending the summons and complaint to "C/O Navient [*i.e.*, NSL] LCP-E1140 at P.O. Box 8006, Fishers, IN" by certified mail.[61] Scillia argues that service "was constitutional as all defendants were given notice for an opportunity to be heard in court."[62]

But this is not proper service. Despite my prior order, Scillia has still failed to properly serve the DOE in accordance with Rule 4(i) because she has neither served the U.S. Attorney for the District of Connecticut nor the Attorney General. *See* Fed. R. Civ. P. 4(i)(1)(A)(i)-(ii), (B). Rule 4(i)(1) requires that Scillia serve the United States by (1) either "deliver[ing] a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States

---

[55] *Id.* at 2.
[56] Docs. #38, #39.
[57] Docs. #38, #39.
[58] Doc. #38.
[59] *Compare* Doc. #32-4 at 4, 7 (returns of service for the DOE and GSMR), *with* Doc. #43 at 4, 7 (returns of service for the DOE and GSMR).
[60] Docs. #43 at 1, 4; #43-1 at 1.
[61] Docs. #43 at 2, 7; #43-2 at 1.
[62] Docs. #43-1 at 1, #43-2 at 1.

attorney designates in a writing filed with the court clerk—or … send[ing] a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office" and (2) by "send[ing] a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C." *Ibid.* My prior order made these specific requirements clear, yet Scillia has not provided any evidence that she has complied. *See Adigun v. Internal Revenue Serv.*, 2021 WL 4709751, at *4 (S.D.N.Y. 2021) (finding that the plaintiff had failed to show that he served the Internal Revenue Service in accordance with Rule 4(i)), *report and recommendation adopted*, 2021 WL 4219664 (S.D.N.Y. 2021).

And Scillia has similarly failed to properly serve GSMR. *See* Fed. R. Civ. P. 4(h). GSMR is a New Hampshire-based business with a principal office address in Concord, New Hampshire.[63] Rule 4(h) provides that a corporation, partnership, or association may be served by following state law or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(A)–(B).

Rule 4(e)(1) and (h)(1) "together provide that service of process on a domestic entity may be made as authorized by the law of either the state in which the district court sits or in which service is effected." *Gonzalez v. New Beginnings for Life, LLC*, 2020 WL 4937990, at *1 (D. Conn. 2020); Fed. R. Civ. P. 4(e), (h). It appears that Scillia has sent the summons and complaint to the wrong company (NSL) in the wrong state (Indiana). Regardless, she has not provided proof that she has served GSMR.[64]

---

[63] *See* New Hampshire Department of State, Business Information, Granite State Management & Resources, https://quickstart.sos.nh.gov/online/BusinessInquire/BusinessInformation?businessID=669505 [https://perma.cc/MLF5-F849] (last accessed July 24, 2023).
[64] GSMR has an agent in Hartford. *See* Doc. #1-5 at 3. But Scillia has not provided the Court with any evidence that

15

I turn now to consider whether to dismiss defendants DOE and GSMR from this lawsuit because Scillia has failed to serve them. Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed," the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff shows "good cause for the failure," then "the court must extend the time for service for an appropriate period." *Ibid.*

It has been more than nine months since Scillia filed her complaint in state court and AES removed the lawsuit to this court.[65] I have already provided her with an extension of time to serve both the DOE and GSMR, and she has not done so.[66] She has not established "good cause" for her failure to serve either defendant, nor has she provided any meaningful explanation for her failure to follow the rules I pointed out to her in my prior orders.[67] Accordingly, I will dismiss this action against both the DOE and GSMR without prejudice.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motions to dismiss of AES and NSL (Docs. #18, #20). I will dismiss Scillia's claims without prejudice to the filing of an amended complaint within 30 days if Scillia has good faith grounds to allege facts that overcome the concerns stated in this ruling. I will also dismiss both DOE and GSMR from this action pursuant to Rule 4(m) without prejudice to the filing of an amended complaint against them within 30 days of this ruling and provided that Scillia is prepared to serve a copy of this amended complaint in compliance with the basic rules that govern service of process. The Clerk of Court shall close this case subject to re-opening if Scillia decides to timely file an amended complaint.

---

she served that representative.
[65] Doc. #1 at 2 (¶ 4).
[66] *See* Docs. #38, #39.
[67] *See* Doc. #43.

It is so ordered.

Dated at New Haven this 27th day of July 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge